IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



FILED
JUL 25 2017
Clerk, U.S. District Court
District Of Montana
Billings

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>Brandon James Lynn,<br><br>Defendant. | CR 16-104-BLG-SPW<br><br>OPINION and ORDER |

Before the Court is Defendant Brandon James Lynn's Motion to Suppress evidence found during a warrantless search of the apartment where Lynn resided with his girlfriend, Jami Nava. (Doc. 41). For the foregoing reasons, the Court GRANTS Lynn's Motion.

I.  Facts

On the morning of November 16, 2014, while at City Hall, Billings Police Officer Andrew Sanders saw that an officer had posted photos of two men suspected of stealing a television. Officer Sanders recognized the two men as Brandon Lynn and Bradley Champagne. Due to prior dealings with Lynn, Officer Sanders knew Lynn resided with his girlfriend, Jami Nava, in an apartment in South Billings. Officer Sanders also knew there was an active probation violation warrant for Champagne's arrest. Officer Sanders decided to go to Lynn's

apartment to speak with Lynn about the theft and to see if Champagne was staying there.

Officer Sanders requested Billings Police Officer Ben Beck accompany him as back up. The two officers met in the parking lot outside the apartment. The apartment was located on the ground floor. Officer Beck followed Officer Sanders as they approached the apartment's front door. Officer Sanders covered the door's peep hole and knocked heavily on the door.

After a minute or two, Nava answered the door, opening it all the way. Officer Sanders, standing on the front porch, asked Nava if Champagne was in the apartment. Nava said "no." Officer Sanders asked Nava if he could speak with Lynn. Nava said "yes, I will go get him," and turned around. Nava did not give verbal consent for the officers to come in, nor did she gesture to the officers to follow her inside. Nava walked down a small hallway to the back bedroom where Lynn was sleeping.

After Nava turned around, Officer Sanders followed her into the apartment. Inside the apartment, Officer Sanders observed and seized drug paraphernalia. Based upon the drug paraphernalia seized, a search warrant was applied for, granted, and executed on the apartment, which uncovered more drug paraphernalia and related evidence.

Lynn filed a motion to suppress the evidence seized from the apartment.

## II. Standard of review

On a motion to suppress, the Ninth Circuit reviews legal conclusions de novo and factual findings for clear error. *United States v. Basher*, 629 F.3d 1161, 1167 (9th Cir. 2011).

## III. Discussion

Warrantless searches and seizures inside a home are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586 (1980). Evidence recovered following an illegal entry of the home is inadmissible and must be suppressed. *United States v. Arreguin*, 735 F.3d 1168, 1174 (9th Cir. 2013) (citing *United States v. Shaibu*, 920 F.2d 1423, 1425 (9th Cir. 1990)).

A home search conducted pursuant to a valid consent is a well-recognized exception to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). To prove consent, the government must show the consent was (1) unequivocal and specific and (2) freely and intelligently given. *Basher*, 629 F.3d at 1167 (citing *Shaibu*, 920 F.2d at 1426). The defendant's failure to object to entry does not establish consent. *Shaibu*, 920 F.2d at 1427. In limited circumstances, the court may infer from nonverbal actions that the consent was unequivocal and specific. *United States v. Impink*, 728 F.2d 1228, 1232 (9th Cir. 1984). But rarely may the Court infer consent when the police do not verbally

request permission to enter. *Lopez-Rodriguez v. Mukasey*, 536 F.3d 1012, 1017 (9th Cir. 2008). The government's burden of proof is heavier where consent is not explicit because consent "is not lightly to be inferred." *Impink*, 728 F.2d at 1232. Whether consent was given is based on the totality of the circumstances. *Impink*, 728 F.2d at 1234.

Lynn argues Officer Sanders illegally entered the apartment because he did not have a warrant and a warrant exception did not exist. The government responds Officer Sanders had valid consent to enter the apartment. The government offers no other argument justifying the search or application of the exclusionary rule. The Court agrees with Lynn.

Officer Sanders did not have consent to enter the apartment. First, Officer Sanders did not ask to enter the apartment; he asked if he could speak to Lynn. The failure to request permission to enter cuts heavily against the government. *Mukasey*, 536 F.3d at 1017. Second, Nava's response—"yes, I will go get him"— did not by itself clearly and unequivocally give Officer Sanders permission to enter. If anything, "yes, I will go get him" communicated to Officer Sanders that he should wait outside the door while Nava went to get Lynn. Third, Nava made no gestures to the officers to follow her inside. She did not gesture with her head or her hands, step back invitingly, or open the door wider. *See Basher*, 629 F.3d at 1167 (holding head nod was clear and unequivocal consent). In short, Nava's

4

verbal and nonverbal actions did not give clear and unequivocal permission to Officer Sanders to enter the apartment. Officer Sanders' entry into the apartment was therefore illegal and the evidence must be suppressed. *Arreguin*, 735 F.3d at 1174.

The government cites *United States v. Mejia*, 953 F.2d 461 (9th Cir. 1991) in support. In *Mejia*, officers went to Mejia's house as part of a drug investigation. Mejia's wife answered the door and let the officers in. The officers asked if anyone else was home and Mejia's wife responded Mejia was asleep in the bedroom. The officers asked her to wake Mejia. The officers followed her into the bedroom when she went to wake Mejia. The officers subsequently seized evidence related to drug distribution. *Mejia*, 953 F.2d at 463. The Ninth Circuit held the officers had implied consent to enter the bedroom. *Mejia*, 953 F.2d at 466.

*Mejia* offers no support to the government. The issue in *Mejia* was whether the officers had consent to enter the bedroom. Crucial to that determination was the undisputed fact that the officers had consent to enter the home. *Mejia*, 953 F.2d at 466 (distinguishing *Shaibu* because "[i]t involved the issue of implied consent to enter a dwelling, rather than the issue of implied consent to enter a room within that dwelling after express consent to enter the dwelling had been given."). Unlike *Mejia*, Officer Sanders did not have consent to enter the apartment.

## IV. Conclusion

The evidence seized from the apartment must be suppressed because Officer Sanders' entry into the apartment was illegal. The government has not argued anything that occurred in the apartment removed the unconstitutional taint of that illegal entry. Lynn's Motion to Suppress is GRANTED. (Doc. 41).

DATED this 25th day of July, 2017.

                                              SUSAN P. WATTERS
                                              United States District Judge